IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SHAH, | ) | |
| | ) | Civil Action No. 04-259E |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Baxter |
| v. | ) | |
| | ) | |
| WALTER RHINEHART, Psy. D., | ) | Electronically Filed |
| HERBERT BEAM, M.D., | ) | |
| JAMES L. FLETCHER, M.D., | ) | |
| DENNIS OLSON, M.D., | ) | |
| VIOLETTE GEZA, | ) | |
| STEVEN LABOZZI, | ) | |
| BONNIE SAYLOR, | ) | |
| JUDITH GLENN, and | ) | |
| CHARLES MONTGOMERY | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR IN THE
ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

**I. Preliminary Statement**

Plaintiff, a former federal inmate, brings suit against several current and former

Bureau of Prison employees alleging that they violated the Eighth Amendment of the

Constitution by acting deliberately indifferent to Plaintiff's serious medical needs. Because

Plaintiff's complaint falls well short of alleging a claim for deliberate indifference, and because

the undisputed facts of record show that Plaintiff received extensive medical care, Defendants

respectfully move the Court to grant Defendants' motion to dismiss or, in the alternative, motion

for summary judgment. Moreover, because Plaintiff's complaint is totally devoid of any

allegations regarding 8 of the 9 Defendants, Defendants move the Court to dismiss Plaintiff's

complaint for failure to state a claim with regard to the 8 unmentioned Defendants. Additionally,

three of the Defendants must be dismissed from this case because they are employees of the

Public Health Service and are immune from Plaintiff's <u>Bivens</u> claims.  Lastly, all of the

Defendants are entitled to qualified immunity; therefore, Plaintiff's claim simply cannot survive.[1]

## II.  Factual Background

In the interest of brevity and in order to avoid duplicative submissions to the

Court, the detailed facts concerning Plaintiff's medical and psychiatric care relevant to Plaintiff's

complaint and this motion are set forth fully in the Declarations of Dennis Olson, M.D., Clinical

Director of the Federal Correctional Institution ("FCI") McKean, Pennsylvania and Monica

Recktenwald, Executive Assistant and Legal Liaison, Bureau of Prisons, FCI McKean, attached

hereto as Exhibits A and B respectively.[2]  These declarations set forth in chronological order all

of the diagnoses and treatments given to Plaintiff from July, 2002 through his release from prison

in September, 2005.  Additionally, the declarations cite, and are supported by, Plaintiff's medical

and psychiatric records, which are attached to each declaration respectively.  A more general and

basic history is set forth as follows:

On or around January 27, 1989, Plaintiff was sentenced to 240 months of

incarceration for bank robbery by force.  (<u>See</u> Attachments to the Declaration of Joyce Horikawa,

Attorney Advisor, Federal Bureau of Prisons, attached hereto as Exhibit C.)  Plaintiff served his

---

[1]Plaintiff's complaint contains only a Constitutional <u>Bivens</u> claim.  Defendants, however, also explain in this brief why Plaintiff's complaint cannot succeed even if Plaintiff argues it contains a medical malpractice claim.

[2]Given the privacy issues involved with this case, Defendants are filing, simultaneously with this memorandum, a motion for leave to file the declarations and supporting medical records (Exhibits A and B) under seal.  Should the Court grant the Motion to File Under Seal, Defendants will deliver the documents, under seal, to the Clerk's Office.

sentence in various prisons; however, on or around July 19, 2002, Plaintiff was transferred to FCI

McKean from FCI Cumberland, Maryland.  (Id.)  At the time of his transfer, Plaintiff had been

prescribed numerous drugs, including Quetiapine Fumarate.  (Ex. A, ¶ 3.a.)  Quetiapine Fumarate

is known by the brand name Seroquel and is prescribed for the treatment of schizophrenia.  (Id.)

At the time of his transfer, Plaintiff took 200 mg of Seroquel, three times a day, for a total of 600

mg per day.  (Id.)

On or around August 2, 2002, Plaintiff was seen in the psychiatric clinic, via

telepsychiatry, by Dr. James Fletcher, M.D., a staff Psychologist at the Federal Medical Center

Devens, Massachusetts and Herbert Beam, M.D., Staff Physician at FCI McKean.  (Id. at ¶ 3.e.)

Among other things, Plaintiff indicated that his current medications were working well, but he

requested that his prescription for Klonopin be discontinued and his prescription for Seroquel be

increased.  (Id.)  After assessing Plaintiff and his medical history, and after considering Plaintiff's

requests, Dr. Fletcher recommended that Klonopin be discontinued and that Seroquel be

increased to 300 mg, three times a day.  (Id.)[3]

For over two months, Plaintiff took the increased dose of Seroquel with no

problems.  On or around October, 22, 2002, however, Plaintiff stated that he experienced

abdominal cramps 30 minutes after taking each dose of Seroquel.  (Id. at ¶ 3.j.)  Three days later,

on October 25, 2002, Dr. Fletcher again saw Plaintiff via telepsychiatry.  (Id. at ¶ 3.k.)  Plaintiff

stated that he was experiencing cramps and flatulence on the current dosage of Seroquel but only

during the day.  (Id.)  Accordingly, Dr. Fletcher recommended that the dosage be changed to 200

---

[3]On or around July 29, 2002, Plaintiff signed a consent form for the use of Seroquel.  (Id.
at ¶ 3.d.)  The consent form advised him of the utility of the medication, the potential side effects
and the consequences of not taking the medication.  (Id.)

mg, twice a day and 500 mg at bedtime.  (Id.)

Intermittently over the next three weeks, Plaintiff stated that he was experiencing abdominal cramps, heartburn, gas, bloating and constipation.  (Id. at ¶ 3.n - 3.p.)  In response, the medical staff at FCI McKean made several attempts to treat Plaintiff's symptoms.  Among other things, the staff prescribed Pepto-Bismol, Zantac, Maalox Antacid and Dulcolax.  (Id. at ¶ 3.n - 3.p.)  Additionally, the staff attempted to educate Plaintiff on taking his medications as directed and instructed him to drink more water and stop eating before bedtime.  (Id. at ¶ 3.o.)  Moreover, when Plaintiff's constipation become severe, the medical staff provided Plaintiff with enemas. (Id. at ¶ 3.r - 3.s.)

On or around November 27, 2002, after it became clear that Plaintiff was continuing to experience side effects with Seroquel at 900 mg per day, Dr. Beam decreased the dosage to 500 mg at bedtime.  (Id. ¶ 3.t.)  Additionally, in a further attempt to soothe Plaintiff's side effects, Dr. Beam prescribed Prevecid and Fibercon.  (Id.)

On or around December 2, 2002, Plaintiff again complained of abdominal pains and constipation.  (Id. ¶ 3.v.)  Dr. Beam discontinued the Seroquel. (Id.)  Additionally, Dr. Beam prescribed Dulcolax ordered a complete blood count and placed Plaintiff on a 24 hour medical idle.  (Id.)  Later on December 2, 2002, after a consultation with Dr. Fletcher, Plaintiff was prescribed Clonazepam, Venlafaxine, Trazodone and his Prevecid prescription was increased. (Id. ¶ 3.x.)  Moreover, an x-ray of Plaintiff's abdomen was ordered and Dr. Beam noted no abnormalities from Plaintiff's stool samples and rectal exams.  (Id.)

As a result of Plaintiff's Seroquel prescription and usage, Plaintiff filed the instant lawsuit alleging that Defendants prescribed Seroquel at too high a dosage (900 mg) and that such

a dosage amounted to deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment to the Constitution.

## III.  Argument

### A.  Standard of Review for Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is the appropriate method to challenge the legal sufficiency of claims in a complaint.  Fed. R. Civ. P. 12(b)(6); Raines v. Haverford College, 849 F. Supp. 1009, 1010 (E.D. Pa. 1994). Although courts reviewing Rule 12(b)(6) motions generally consider only the allegations in the complaint, courts are also free to examine any exhibits attached thereto, other undisputed documents relied on by the plaintiff, other items appearing in the record of the case, and matters of public record.  Raines, 849 F. Supp. at 1010; see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Indeed, if a court could not consider such documents, "'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which [he] relied.'"  Interfaith Community Org. v. AlliedSignal, Inc., 928 F. Supp. 1339, 1345 (D.N.J. 1996)(quoting Dykes v. Southeastern Pa. Trans. Auth., 68 F.3d 1564, 1567 n.3 (3d Cir. 1995)).

While courts considering motions to dismiss have a limited role, courts should grant such motions where it is clear that no relief could be granted under any set of facts that are consistent with the allegations of a complaint.  Interfaith Community Org., 928 F. Supp. at 1346. The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff has any chance of doing so.  Id.; Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

When making this determination, courts "must accept as true all of the matters pleaded and all reasonable inferences that can be drawn therefrom, construing them in the light most favorable to the non-moving party." <u>Raines</u>, 849 F. Supp. at 1010. Nevertheless, legal conclusions made in the guise of factual allegations should not be given any presumption of truthfulness. <u>Interfaith Community Org.</u>, 928 F. Supp. at 1346.

### B. <u>Standard of Review for Summary Judgment</u>

Summary judgment is appropriate when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Equimark Comm. Fin. Co. v. C.I.T. Fin. Serv. Corp.</u>, 812 F.2d 141, 144 (3d Cir. 1987). If evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249-50; <u>Equimark</u>, 812 F.2d at 144. That is, "where the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment is proper. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 599 (1986); <u>see also</u> <u>Hankins v. Temple Univ.</u>, 829 F.2d 437, 440 (3d Cir. 1987).

The Third Circuit has clarified that district courts should not view summary judgment motions as "a disfavored procedural shortcut," but as "the first opportunity to dispose of meritless cases." <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1362 (3d Cir. 1992). Accordingly, a district court is no longer required to "turn a blind eye" to the weight of the evidence. <u>Id.</u> at 1363. Rather, to survive summary judgement, the non-moving party must actually come forward with "<u>affirmative</u> <u>evidence</u> in order to defeat a properly supported motion

6

for summary judgment." <u>Anderson</u>, 477 U.S. at 257 (emphasis added).

In short, mere conjecture or speculation by the party resisting summary judgment cannot provide a basis upon which to deny the motion. <u>Quarles v. GMC (Motors Holding Div.)</u>, 758 F.2d 839, 840 (2d Cir. 1985).

### C. **Plaintiff has Failed to State a Claim Against 8 of the 9 Defendants**

Plaintiff has named 9 defendants in this case, and he has served process on all 9 defendants. A review of the complaint, however, reveals that Plaintiff brought allegations against only one defendant, Herbert Beam, M.D. (Complaint attached hereto as Ex. D.) The sole issue in Plaintiff's complaint is that he was prescribed Seroquel in an excessive dosage, violating his Eighth Amendment rights. The only Defendant that Plaintiff identifies as having prescribed this drug is Dr. Beam. (Compl. ¶ IV.C.) In fact, there is not a single sentence in the entire complaint that identifies the actions of any other defendant, let alone allegations that these other 8 defendants acted with deliberate indifference in prescribing Seroquel in an excessive dosage. If the Court accepts every allegation in the Complaint as true, there is no liability that could be found against any of the other 8 defendants and no relief that Plaintiff could receive from these 8 defendants. Accordingly the 8 defendants who are not addressed in the complaint, Walter Rhinehart, James Fletcher, Dennis Olson, Violette Geza, Steven LaBozzi, Bonnie Saylor, Judith Glenn and Charles Montgomery, must be dismissed from this action, as Plaintiff has failed, even by liberal *pro se* standards, to state a claim upon which relief can be granted. <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d. Cir. 1985)(stating that, assuming the facts in the complaint are true, a motion to dismiss can be granted when Plaintiff can prove no set of facts that would entitled him to relief); <u>Lowry v. Division of Youth and Family Services</u>, 363

7

F. Supp.2d 728, 737-38 (D. N.J. 2005).

### D. Plaintiff has Failed to State a Claim for Deliberate Indifference to Serious Medical Needs

To state a claim for a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate that the defendants exhibited "deliberate indifference to [his] serious medical needs . . ." Estelle v. Gamble, 429 U.S. 97, 104 (1976); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). For conduct to rise to the level of deliberate indifference, a plaintiff must demonstrate "an unnecessary and wanton infliction of pain" which is "repugnant to the conscience of mankind" and "offend[s] evolving standards of decency." Estelle, 429 U.S. at 105-106. A plaintiff may satisfy this standard by demonstrating both that (1) plaintiff had a serious medical need, and also that (2) the defendant was aware of this need and was deliberately indifferent to it. See Wilson v. Seiter, 501 U.S. 294, 296-98 (1991); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

With regard to the first element, under the Constitution, prison officials must provide care only for "serious medical needs." See Estelle, 429 U.S. at 104. The Third Circuit defines a medical need as "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987); Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979).

With regard to the second element of the test, to establish deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "The question . . . is whether prison officials,

acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Id. at 843. There must be some evidence that the health care providers knowingly and intentionally rendered improper treatment. Id. at 837 (stating a prison official does not act in a deliberately indifferent manner towards an inmate unless he "knows of and disregards an excessive risk to inmate health or safety").

Moreover, courts will not second-guess the propriety or adequacy of a particular course of treatment that is the proper subject of sound professional judgment. Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987). "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993), and "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). A disagreement between the physician and the prisoner regarding the medical diagnosis and treatment does not constitute deliberate indifference under the Eighth Amendment. Boring, 833 F.2d at 473. Rather, a physician's decision regarding diagnostic treatment constitutes medical judgment which is not actionable under § 1983. Estelle, 429 U.S. at 107.

Furthermore, even if a physician's judgment was incorrect, the law is clear that medical malpractice is insufficient to present a constitutional violation. See Estelle, 429 U.S. at 105-06; Durmer, 991 F.2d at 67; Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(negligent medical treatment is not actionable under the Eighth Amendment); Unterberg v. Correctional Medical Systems, Inc., 799 F. Supp. 490, 497 (E.D. Pa. 1992)(medical malpractice is not deliberate indifference). The Third Circuit has ruled that "while the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long

9

as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

The Third Circuit has recognized that the deliberate indifference standard is also applicable in evaluating the constitutional adequacy of psychological or psychiatric care in prisons. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979) In reaching this conclusion, the Third Circuit embraced the reasoning set forth in Bowring v. Godwin, 551 F.2d 44 (4th Cir. 1977), that there is "no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart." Inmates of Allegheny Cty. Jail, 612 F.2d at 763 (citing Bowring, 551 F.2d at 47). Similar to physical care, "courts generally refrain from second-guessing the propriety or adequacy of a particular type of psychological or psychiatric treatment and from recognizing claims of negligence, mistake or difference of opinion." Carrigan v. State of Del., 957 F. Supp. 1376, 1384 (D.Del 1997)(citing Bowring, 551 F.2d at 48).

In the instant case, Plaintiff simply has not alleged any facts that rise to the level of deliberate indifference to serious medical needs, and the undisputed facts of record do not support such a claim. As discussed in the fact section above, and as revealed in detail in the medical records attached hereto, FCI McKean provided Plaintiff with extensive medical and psychiatric care. A review of the declarations of Dennis Olson, M.D. and Monica Recktenwald, and a review of the medical records show that FCI McKean medical and psychiatric staff examined Plaintiff on numerous occasions and repeatedly treated Plaintiff's symptoms.

Plaintiff specifically alleges that the medical and psychiatric staff were deliberately indifferent because they prescribed him Seroquel at 900 mg per day. As discussed

10

above, a disagreement between the physician and the prisoner regarding the medical diagnosis

and treatment does not constitute deliberate indifference under the Eighth Amendment. <u>Boring</u>,

833 F.2d at 473.  Rather, a physician's decision regarding diagnostic treatment constitutes

medical judgment which is not actionable under § 1983. <u>Estelle</u>, 429 U.S. at 107.

 Moreover, Plaintiff's allegations actually show that the medical and psychiatric

staff were not acting with deliberate indifference but, to the contrary, the staff was actively

attempting to treat Plaintiff's schizophrenia.  In an ongoing effort to treat the schizophrenia, the

medical and psychiatric staff repeatedly adjusted Plaintiff's prescription of Seroquel.  On or

around August 2, 2002, after examining Plaintiff and reviewing his medical history, the medical

and psychiatric staff increased Plaintiff's Seroquel from 600 mg per day to 900 mg per day.

(Olson Decl. ¶ 3.e.)  Several weeks passed with no complaints from Plaintiff.  On October 25,

2002, however, after Plaintiff complained that the Seroquel was causing him side effects during

the day, the staff altered the prescription by ordering Plaintiff to take 200 mg twice a day and 500

mg at bedtime.  (<u>Id.</u> ¶ 3.k.)  On November 27, 2002, after Plaintiff continued to experience side

effects, the staff again altered the dosage by reducing it to 500 mg per day at bedtime.  (<u>Id.</u> ¶ 3.t.)

Less than a week later, on December 2, 2002, the staff altered the prescription yet again by

discontinuing the use of Seroquel and starting Plaintiff on other medications.  (<u>Id.</u> at 3v & 3x.)

 Additionally, with regard to the side effects that Plaintiff allegedly experienced on

Seroquel, the medical staff made multiple attempts at treating the symptoms.  Plaintiff's

symptoms consisted of abdominal cramps, heartburn, gas, bloating and constipation.  (<u>Id.</u> at ¶ 3.n

- 3.p.)  In response to these symptoms, the medical staff prescribed Pepto-Bismol, Zantac,

Maalox Antacid, Dulcolax, Prevecid and Fibercon.  (<u>Id.</u> at ¶ 3.n - 3.p, 3.t.)  The staff also

11

attempted to educate Plaintiff on taking his medications as directed and instructed him to drink

more water and stop eating before bedtime.  (Id. at ¶ 3.o.) When Plaintiff's constipation became

severe, the medical staff provided Plaintiff with enemas.  (Id. at ¶ 3.r - 3.s.)  Moreover, the staff

ordered abdominal x-rays, analyzed stool samples and conducted a rectal exam.  (Id. at 3.x.)

Given the numerous steps taken by the medical and psychiatric staff to adjust the

dosage of Seroquel and treat Plaintiff's symptoms, Plaintiff's allegations, and the undisputed

facts of record, fall well short of claim for deliberate indifference.  Under no circumstances can

Plaintiff demonstrate "an unnecessary and wanton infliction of pain" which is "repugnant to the

conscience of mankind" and "offend[s] evolving standards of decency."  Estelle, 429 U.S. at 105-

106.  To the contrary, the medical and psychiatric staff repeatedly examined, diagnosed and

treated Plaintiff while exercising sound clinical judgment.

Moreover, Plaintiff's allegation that the dosage level of 900 mg/day of Seroquel

exceeded the maximum dosage recommended and/or tested by the manufacturer for FDA clinical

trials is not dispositive with respect to deliberate indifference.  FDA registration trials of anti-

psychotic medications do not address the effects of treatment on various illness phases.  The

trials also commonly exclude treatment-resistant patients and those with refractory illness.  In

these patients, for example, empirical trials of higher anti-psychotic dosages is often considered

as a clinical option.  Trials of Seroquel 1,000 mg to 1,400 mg per day have been studied with no

significant changes observed regarding mean weight, glucose, total cholesterol, prolactin, or

electro-cardiogram Q-T wave intervals.

For instance, in the journal Clinical Psychiatry Online, an article citing several

clinical studies reported in academic psychiatry journals from 1997 through 2003, it is reported

that most patients with chronic schizophrenia required Seroquel at a dosage rate of 400 to 800

mg/day.  However, some treatment-refractory patients could benefit from dosages of Seroquel at

a rate of over 800 mg/day.  (See Current Psychiatry Online, High-Dose Antipsychotics:

Desperation or Data-Driven?, Vol. 3, No. 8 (August 2004), attached to the Declaration of Joyce

Horikawa, attached hereto as Ex. C.)[4]

       The article indicated in one case, a patient responded to Seroquel at a dosage of

1,600 mg/day, after not responding to Olanzapine, 40 mg/day, and Seroquel, 800 mg/day, with

constipation being the only side-effect.  (Id.)  A group of seven patients responded to Seroquel at

a dosage rate of 1,200 to 2,400 mg/day.  (Id.)  It was reported that at the higher dosage of

Seroquel, psychopathology, violence, and behavioral disturbances were reduced throughout five

to fourteen months of monitoring.  Side effects included sedation, orthostasis (dizziness when

standing) and dysphagia (pain and difficulty swallowing). (Id.)  It was also reported that when a

group of 13 subjects were treated for fourteen weeks with Seroquel at a dosage rate of 1,000 to

1,400 mg/day, mean weight, glucose, total cholesterol, prolactin and Qtc interval duration did not

change significantly.  Heart rate increase (though not to tachycardia), headache, constipation and

lethargy were the most frequent side effects.  (Id.)

       In this case, Plaintiff's only allegation against Defendant Beam was that he

prescribed Seroquel at a dosage that was 100 mg per day higher than that recommended and or

tested by the manufacturer.  As explained above, the clinical decision made regarding the dosage

prescribed to Plaintiff was grounded upon numerous unique variables and sound clinical

---

[4]As mentioned earlier in this brief, Seroquel is a brand name for Quetiapine.  This article refers to the drug as Quetiapine.

judgment, supported by academic research.  To equate this decision with deliberate indifference
would limit government physicians from exercising their clinical knowledge and abilities to
better treat inmates given unique variables presented by each patient.  Accordingly, the
undisputed facts of record show that Plaintiff has not stated, and cannot succeed on, a claim for
deliberate indifference to serious medical needs.[5]

### E.  This is Not a Medical Malpractice Case and the Court has No Jurisdiction for a Malpractice Claim

Plaintiff's claim must be interpreted as a Constitutional <u>Bivens</u> claim, as Plaintiff
has named individuals, and not the United States, as defendants.  When bringing a claim for the
alleged negligence of federal employees, the exclusive remedy is against the United States of
America, not its employees.  28 U.S.C. § 2679(b)(1).  Given that Plaintiff has not named the
United States of America as a defendant, the instant complaint contains no claim for negligence.

Moreover, even if the Court interpreted Plaintiff's complaint to contain a claim
for negligence, pursuant to the Federal Tort Claims Act it must dismissed, as Plaintiff failed to
file his complaint within six months of the date when he received his notice of denial for his
administrative tort claim.  28 U.S.C. § 2401(b) provides:

> A tort claim against the United States shall be forever barred unless it is presented
> in writing to the appropriate Federal agency within two years after such claim
> accrues or unless action is begun within six months after the date of mailing, by
> certified or registered mail, of notice of final denial of the claim by the agency to

---

[5]Plaintiff also alleges that he was prescribed Seroquel without informed consent.  This
allegation is simply not true, as Plaintiff signed a consent form for Seroquel on July 29, 2002.
(<u>See</u> Olson declaration ¶ 3.d, and related consent form at pg. 237 of the medical records.)  The
consent form advised Plaintiff of the useful properties of Seroquel and the common side effects.
It also advised Plaintiff of the consequences and possible benefits of not taking Seroquel.
Moreover, even if Plaintiff did not consent, which he did, this allegation falls well short of a
constitutional violation for deliberate indifference as described in the above-cited case law.

which it was presented.

Additionally, the time limits expressed in this statute are jurisdictional and cannot be waived.  In re Franklin Savings Corp., 385 F.3d 1279, 1287 (10th Cir. 2004)(holding that District Court lacks subject matter jurisdiction when Plaintiff fails to meet timing requirements in 28 U.S.C. § 2401(b)); Roman v. Townsend, 224 F.3d 24, 28 (1st Cir. 2000).  Accordingly, when a plaintiff fails to satisfy the timing requirements set forth in the Federal Tort Claims Act, the Court does not have jurisdiction over the claim and it must be dismissed.  In re Franklin Savings Corp., 385 F.3d at 1291; Roman, 224 F.3d at 28-29; Hammond v. United States, 613 F. Supp. 358, 359 (W.D. Pa. 1985).

In the instant case, there is no dispute that Plaintiff did not file his complaint within six months of his letter of denial.  On or around June 30, 2003, Plaintiff filed an administrative tort claim.  On or around November 20, 2003, the Northeast Regional Counsel of the Federal Bureau of Prisons issued a memorandum denying Plaintiff's claim.  (Denial Memorandum attached to Horikawa Decl., Ex. C.)  On November 25, 2003, Plaintiff received the November 20, 2003 denial memorandum.  (Acknowledgment of Receipt, signed by Plaintiff, attached to Horikawa Decl., Ex. C.)  The denial memorandum specifically instructs Plaintiff that if he is dissatisfied with the decision, he can bring a lawsuit within six (6) months of the date of the memorandum.  (Id.)

On or around September 13, 2004, Plaintiff filed the instant action, nearly ten months after receiving the denial of his administrative claim.  To the extent Plaintiff claims his complaint contains a tort claim, which it does not, Plaintiff's complaint is far from meeting the six (6) month requirement set forth in 28 U.S.C. § 2401(b).  Additionally, under the "mailbox

15

rule," pro se prisoners are permitted to use the documented date on which a pleading is given to prison staff to mail to court as the date of filing. See Houston v. Lack, 487 U.S. 266, 275-76 (1988). In this case, however, Plaintiff dated his Complaint on September 3, 2004. (See Compl. at 4.) Therefore, Plaintiff was still in possession of his Complaint on September 3, 2004, long after his six month statute of limitations expired. Even if Plaintiff submitted his Complaint to prison staff on the day he signed the complaint, his filing was not timely. Accordingly, the statute of limitations has long expired and, to the extent a tort claim exists, the Court does not have jurisdiction over it and it must be dismissed with prejudice.

### F. Defendants Geza, Saylor and Glenn are Public Health service Employees and are Immune from Suit

As discussed above, Plaintiff names Violette Geza, Bonnie Saylor and Judith Glenn as Defendants in this action but does not raise a single allegation against any of the three. However, even if Plaintiff had alleged that Defendants Geza, Saylor and Glenn were deliberately indifferent to his serious medical needs, these Defendants could not be held liable, as they were, at all relevant times, employees of the Public Health Service.

It is well settled that under 42 U.S.C. § 233(a), members of the Public Heath Service are absolutely immune from suit in a Bivens action if the injury for which compensation is sought resulted from the performance of a medical or related function while acting within the scope of their office or employment. Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000); Brown v. McElroy, 160 F. Supp.2d 699, 703 (S.D.N.Y. 2001). In the instant case, Defendants Geza, Saylor, and Glenn, were Public Health Services employees throughout the period in which Plaintiff alleges he was subjected to deliberate indifferent medical treatment. (Recktenwald

16

Decl., Ex. B ¶ 4.)  Accordingly these three employees are absolutely immune from <u>Bivens</u>

liability, and they must be dismissed from this lawsuit.

### G.  All of the Defendants Are Entitled to Qualified Immunity

Plaintiff's constitutional claim should be dismissed or, in the alternative, summary

judgment should be granted to Defendants on the grounds that all of the Defendants are entitled

to qualified immunity.  Qualified immunity protects government officials performing

discretionary functions from "liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity

from suit rather than a mere defense to liability."  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).

Qualified immunity thus gives government officials "a right, not merely to avoid 'standing trial,'

but also to avoid the burdens of 'such pretrial matters as discovery . . ..'"  <u>Behrens v. Pelletier</u>,

516 U.S. 299, 308 (1996) (quoting <u>Mitchell</u>, 472 U.S. at 526).  The Supreme Court, accordingly,

has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest

possible stage in litigation,'" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (quoting <u>Hunter v.

Bryant</u>, 502 U.S. 224, 227 (1991).

"A court required to rule upon the qualified immunity issue must consider, then,

this threshold question:  Taken in the light most favorable to the party asserting the injury, do the

facts alleged show the officer's conduct violated a constitutional right?"  <u>Saucier</u>, 533 U.S. at

201; <u>see</u> <u>also</u> <u>Brosseau v. Haugen</u>, 125 S. Ct. 596, 598 (2004).  If so, "the next sequential step is

to ask whether the right was clearly established."  <u>Saucier</u>, 533 U.S. at 201.  "The relevant,

dispositive inquiry in 'determining whether a right is clearly established is whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

Brosseau, 125 S. Ct. at 599 (quoting Saucier, 533 U.S. at 202).  Therefore, "[i]f the law did not

put the officer on notice that his conduct would be clearly unlawful, summary judgment based on

qualified immunity is appropriate."  Saucier, 533 U.S. at 202.

In other words, "clearly established" means that an officer is entitled to "fair

warning" that his conduct deprives the victim of a federal right "even in novel factual

circumstances" where courts have not previously addressed the precise factual circumstances

presented in the case at bar, such as where the words of the Constitution or a federal statute are

clear or where case law sets forth one or more broad principles with obvious clarity that itself

will clearly establish the law for future cases under factual variations.  Hope v. Pelzer, 536 U.S.

730, 739-41 (2002).

In the instant case, Defendants meet both parts of the two-pronged test and are

entitled to qualified immunity.  With regard to the first prong, the complaint does not allege facts

that would show a constitutional violation.  As an initial matter, and as discussed above, Plaintiff

has not brought a single allegation against 8 of the 9 named defendants.  Accordingly, the first

prong of the test is not met with regard to these defendants.  With regard to the remaining

defendant, Dr. Beam, Plaintiff's allegations against him do not rise to the level of a constitutional

violation.  As discussed at length above, Dr. Beam's clinical judgment to prescribe Seroquel at

900 mg per day falls well short of deliberate indifference or any other constitutional violation.

At most, Plaintiff's allegations show nothing more than his disagreement with Dr. Beam's

decisions.

Moreover, with regard to Dr. Beam, even if the first prong of the test is not

18

satisfied, which it is, the second prong of the test is satisfied, as it would not be clear to a medical professional that prescribing Seroquel at 900 mg per day is a constitutional violation.  As discussed at length above, exercising sound clinical judgment does not rise to the level of deliberate indifference.  Moreover, there are documented studies that show some patients respond positively to Seroquel at doses as high as 2,400 mg per day.  (See attachments to Ex. C.) Accordingly, Dr. Beam could not possibly have known that he was violating Plaintiff's constitutional rights by adjusting Plaintiff's Seroquel prescription in an attempt to further treat Plaintiff's schizophrenia.  Therefore, all defendants, including Dr. Beam, are entitled to qualified immunity, and this case must be dismissed with prejudice.

**IV. Conclusion**

                For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss or, in the alternative, Motion for Summary Judgment.


Dated: November 21, 2005                    Respectfully Submitted,
                                             MARY BETH BUCHANAN
                                               UNITED STATES ATTORNEY


                                               s/ Lee J. Karl_____
                                               LEE J. KARL
                                               Assistant U.S. Attorney
                                               Western District of Pennsylvania
                                               700 Grant Street, Suite 4000
                                               Pittsburgh, PA 15219
                                               (412) 894-7488
                                               PA ID No. 87856


OF COUNSEL:
Joyce Horikawa, Esquire
Federal Bureau of Prisons
U.S. Custom House
2nd & Chestnut Street, 7th Floor
Philadelphia, PA 19106

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the within Defendants' Motion to

Dismiss, or in the alternative, Motion for Summary Judgment was served via First Class U.S.

Mail on this 21st day of November, 2005, upon the following:

Robert Shah
22455 Carlysle
Dearborn, MI 48124


  s/ Lee J. Karl
Lee J. Karl
Assistant U.S. Attorney