UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

ROBERT SHAH,                              :
                          Plaintiff,      :
                                          :
                                          :
        - v -                             :        Civil Action No. 04-259 (Erie)
                                          :
WALTER RINEHART, et al.,                  :
                          Defendants.     :

<u>DECLARATION OF JOYCE HORIKAWA</u>

I, Joyce Horikawa, make the following declaration under penalty of perjury:

1. I am an Attorney Advisor employed by the United States Department of Justice, Federal Bureau of Prisons, Northeast Regional Office, Philadelphia, Pennsylvania. I have been employed in this capacity since approximately April 8, 2001. As an Attorney Advisor, I have access to most documents maintained in the ordinary course of business at the Federal Bureau of Prisons, Northeast Regional Office, including records maintained in the Bureau of Prisons nationwide computer data base.

2. I am familiar with Bureau of Prisons policies and procedures pertaining to the processing of administrative tort claims asserted under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 <u>et seq</u>, (hereinafter FTCA), and submitted to the Bureau of Prisons pursuant to 28 C.F.R. §§ 543.30-.32.

3. The Bureau of Prisons' regulations applicable to administrative claims asserted under the FTCA require claims to be submitted first to the Regional Office in the region where the basis for the claim occurred. 28 C.F.R. § 543.31(c). The Federal Correctional Institution (FCI), McKean, Pennsylvania, is a facility located within the territorial boundaries of the Northeast Region of the Bureau of Prisons. 28 C.F.R. §§ 503.2(b)(5). Thus, any administrative tort claim arising out of the conditions at FCI McKean would be processed by the Bureau of Prisons Northeast Regional Counsel's Office in Philadelphia, Pennsylvania.

GOVERNMENT
EXHIBIT
C

4.  Under the applicable regulations, the denial of a claim by either the Regional Counsel or his/her designee, or the Office of the General Counsel constitutes a final administrative action, and if a claimant is dissatisfied with the final action, he/she may file suit in an appropriate U.S. District Court as no further administrative action is available.  28 C.F.R. § 543.32(g).

5.  In connection with the above-captioned civil action, I accessed the administrative tort claim filed by inmate Robert Shah, Reg. No. 01215-039, to determine if and/or when he filed and/or exhausted his administrative remedies under the FTCA for any allegation set forth in the complaint he filed in the above-captioned civil action.  A search of these tort claim records reveals that on or about June 30, 2003, Plaintiff filed an administrative tort claim with the Federal Bureau of Prisons Northeast Regional Office.  In a memorandum dated November 20, 2003, Plaintiff's administrative tort claim was denied.  This denial memorandum was receipted by inmate Shah on November 25, 2003.   The denial memorandum advised inmate Shah that if he was not satisfied with the decision, he could file a lawsuit in United States District Court within six months of the date of the memorandum.  See Memorandum dated November 20, 2003, attached hereto.

6.  On or about November 7, 2005, I accessed the Pacer Civil Docket sheet for the above-captioned civil action to determine whether inmate Shah filed this lawsuit within six months of either November 20, 2003, or November 25, 2003.  My review of the docket sheet for this civil action revealed that inmate Shah filed this lawsuit on September 14, 2004, which is approximately nine months after both the date and inmate Shah's receipt of the denial memorandum from the Bureau of Prisons Northeast Regional Counsel.

7.  Attached hereto, please find true and correct copies of the following records that are maintained in the ordinary course of business in the Bureau of Prisons, Northeast Regional Office:

a.    Public Information Data for former inmate Robert Shah, Register Number 01215-039;

b.    Request for Administrative Remedy, Case Number 343051, and Response dated July 29, 2004;

c.    Regional Administrative Remedy Appeal, Case Number 343051-R1, and response dated September 15, 2004;

d.    Central Office Administrative Remedy Appeal, Case Number 343051-A1, and response, dated November 16, 2004; and

e.    Pierre, Joseph, M., M.D., *High-Dose Antipsychotics: Desperation or data-driven?* Current Psychiatry Online, Vol 3, No. 8; and

f.    Tort Claim Denial Memorandum, and Acknowledgment of Receipt of Denial of Tort Claim, signed by inmate Robert Shah, Reg. No. 01215-039, on November 25, 2003.

I declare the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this 21st day of November, 2005.

Joyce M. Horikawa
Senior Attorney Advisor
Philadelphia, PA

# Document 1a

```
   NERH4            *        PUBLIC INFORMATION         *    10-21-2005
   PAGE 001         *           INMATE DATA             *    08:36:05
                                AS OF 10-21-2005
```

REGNO..: 01215-039 NAME: SHAH, ROBERT ARBEB

```
                RESP OF: CDT / GOOD CONDUCT TIME RELEASE
                PHONE..: 313-226-6186    FAX: 313-226-7327
                                         RACE/SEX...: WHITE / MALE
   FBI NUMBER.: 577315D                  DOB/AGE....: 12-12-1942 / 62
   ACTUAL RELEASE METH.: GCT REL
   ACTUAL RELEASE DATE.: 09-16-2005
```

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| CDT | GCT REL | GOOD CONDUCT TIME REL (CCCA) | 09-16-2005 0854 | CURRENT |
| CDT | A-DES | DESIGNATED, AT ASSIGNED FACIL | 05-17-2005 1230 | 09-16-2005 0854 |
| O-Z | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-17-2005 1230 | 05-17-2005 1230 |
| O-Z | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-17-2005 1147 | 05-17-2005 1230 |
| CDT | TRANSFER | TRANSFER | 05-17-2005 1147 | 05-17-2005 1147 |
| CDT | A-DES | DESIGNATED, AT ASSIGNED FACIL | 03-08-2005 0445 | 05-17-2005 1147 |
| 3-N | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-08-2005 0445 | 03-08-2005 0445 |
| 3-N | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-07-2005 1354 | 03-08-2005 0445 |
| MCK | FURL TRANS | FURL W/UNESCORTED TRF TO A CCC | 03-07-2005 1354 | 03-07-2005 1354 |
| MCK | A-DES | DESIGNATED, AT ASSIGNED FACIL | 08-17-2003 2034 | 03-07-2005 1354 |
| MCK | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 08-12-2003 0748 | 08-17-2003 2034 |
| MCK | A-DES | DESIGNATED, AT ASSIGNED FACIL | 07-30-2003 1018 | 08-12-2003 0748 |
| MCK | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 07-30-2003 0800 | 07-30-2003 1018 |
| MCK | A-DES | DESIGNATED, AT ASSIGNED FACIL | 06-23-2003 1226 | 07-30-2003 0800 |
| MCK | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 06-23-2003 1010 | 06-23-2003 1226 |
| MCK | A-DES | DESIGNATED, AT ASSIGNED FACIL | 05-05-2003 1902 | 06-23-2003 1010 |
| MCK | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 05-05-2003 1033 | 05-05-2003 1902 |
| MCK | A-DES | DESIGNATED, AT ASSIGNED FACIL | 03-24-2003 1126 | 05-05-2003 1033 |
| MCK | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 03-24-2003 0933 | 03-24-2003 1126 |
| MCK | A-DES | DESIGNATED, AT ASSIGNED FACIL | 07-19-2002 0825 | 03-24-2003 0933 |
| S18 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-19-2002 0825 | 07-19-2002 0825 |
| S18 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 07-19-2002 0534 | 07-19-2002 0825 |
| LEW | HLD REMOVE | HOLDOVER REMOVED | 07-19-2002 0534 | 07-19-2002 0534 |
| LEW | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 07-15-2002 1712 | 07-19-2002 0534 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-15-2002 1712 | 07-15-2002 1712 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 07-15-2002 0924 | 07-15-2002 1712 |
| CUM | TRANSFER | TRANSFER | 07-15-2002 0924 | 07-15-2002 0924 |
| CUM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 05-13-2002 1721 | 07-15-2002 0924 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-13-2002 1721 | 05-13-2002 1721 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-13-2002 1020 | 05-13-2002 1721 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 05-13-2002 0920 | 05-13-2002 0920 |
| OKL | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 05-08-2002 1635 | 05-13-2002 0920 |
| A02 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-08-2002 1735 | 05-08-2002 1735 |
| A02 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-08-2002 1401 | 05-08-2002 1735 |
| RCH | TRANSFER | TRANSFER | 05-08-2002 1301 | 05-08-2002 1301 |
| RCH | A-DES | DESIGNATED, AT ASSIGNED FACIL | 10-18-2001 1435 | 05-08-2002 1301 |

```
   G0002        MORE PAGES TO FOLLOW . . .
```

```
  NERH4           *      PUBLIC INFORMATION      *    10-21-2005
  PAGE 002        *         INMATE DATA          *    08:36:05
                           AS OF 10-21-2005

REGNO..: 01215-039 NAME: SHAH, ROBERT ARBEB

                RESP OF: CDT / GOOD CONDUCT TIME RELEASE
                PHONE..: 313-226-6186   FAX: 313-226-7327
6-H     RELEASE      RELEASED FROM IN-TRANSIT FACL 10-18-2001 1535 10-18-2001 1535
6-H     A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 10-18-2001 0839 10-18-2001 1535
CUM     TRANSFER     TRANSFER                      10-18-2001 0839 10-18-2001 0839
CUM     A-DES        DESIGNATED, AT ASSIGNED FACIL 08-30-2001 1456 10-18-2001 0839
CUM     LOCAL HOSP   ESC TRIP TO LOCAL HOSP W/RETN 08-30-2001 1215 08-30-2001 1456
CUM     A-DES        DESIGNATED, AT ASSIGNED FACIL 03-20-2001 0942 08-30-2001 1215
CUM     LOCAL HOSP   ESC TRIP TO LOCAL HOSP W/RETN 03-20-2001 0822 03-20-2001 0942
CUM     A-DES        DESIGNATED, AT ASSIGNED FACIL 08-28-2000 1014 03-20-2001 0822
CUM     LOCAL HOSP   ESC TRIP TO LOCAL HOSP W/RETN 08-28-2000 0826 08-28-2000 1014
CUM     A-DES        DESIGNATED, AT ASSIGNED FACIL 07-03-2000 1746 08-28-2000 0826
A01     RELEASE      RELEASED FROM IN-TRANSIT FACL 07-03-2000 1746 07-03-2000 1746
A01     A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 07-03-2000 0830 07-03-2000 1746
OKL     HLD REMOVE   HOLDOVER REMOVED              07-03-2000 0730 07-03-2000 0730
OKL     A-BOP HLD    HOLDOVER FOR INST TO INST TRF 06-16-2000 1730 07-03-2000 0730
A01     RELEASE      RELEASED FROM IN-TRANSIT FACL 06-16-2000 1830 06-16-2000 1830
A01     A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 06-16-2000 1117 06-16-2000 1830
BEC     TRANSFER     TRANSFER                      06-16-2000 1117 06-16-2000 1117
BEC     A-DES        DESIGNATED, AT ASSIGNED FACIL 03-02-2000 1630 06-16-2000 1117
A01     RELEASE      RELEASED FROM IN-TRANSIT FACL 03-02-2000 1630 03-02-2000 1630
A01     A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 03-02-2000 1025 03-02-2000 1630
OKL     HLD REMOVE   HOLDOVER REMOVED              03-02-2000 0925 03-02-2000 0925
OKL     A-HLD        HOLDOVER, TEMPORARILY HOUSED  02-25-2000 1735 03-02-2000 0925
3-J     RELEASE      RELEASED FROM IN-TRANSIT FACL 02-25-2000 1835 02-25-2000 1835
3-J     A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 02-25-2000 1031 02-25-2000 1835
LOS     HLD REMOVE   HOLDOVER REMOVED              02-25-2000 0731 02-25-2000 0731
LOS     A-HLD        HOLDOVER, TEMPORARILY HOUSED  01-24-2000 1814 02-25-2000 0731
LOS     ADM CHANGE   RELEASE FOR ADMISSION CHANGE  01-24-2000 1813 01-24-2000 1814
LOS     A-PRE        PRE-SENT ADMIT, ADULT         01-21-2000 2017 01-24-2000 1813
6-A     RELEASE      RELEASED FROM IN-TRANSIT FACL 01-21-2000 2317 01-21-2000 2317
6-A     A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 01-20-2000 1305 01-21-2000 2317
BEC     FED WRIT     RELEASE ON FEDERAL WRIT       01-20-2000 1305 03-02-2000 1630
BEC     A-DES        DESIGNATED, AT ASSIGNED FACIL 01-13-2000 1512 01-20-2000 1305
A01     RELEASE      RELEASED FROM IN-TRANSIT FACL 01-13-2000 1512 01-13-2000 1512
A01     A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 01-13-2000 1116 01-13-2000 1512
BEC     FED WRIT     RELEASE ON FEDERAL WRIT       01-13-2000 1116 01-13-2000 1512
BEC     A-DES        DESIGNATED, AT ASSIGNED FACIL 01-06-2000 1447 01-13-2000 1116
A01     RELEASE      RELEASED FROM IN-TRANSIT FACL 01-06-2000 1447 01-06-2000 1447
A01     A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 01-06-2000 1018 01-06-2000 1447

G0002       MORE PAGES TO FOLLOW . . .
```

```
   NERH4           *        PUBLIC INFORMATION          *     10-21-2005
 PAGE 003          *            INMATE DATA             *     08:36:05
                            AS OF 09-16-2005

REGNO..: 01215-039 NAME: SHAH, ROBERT ARBEB

                   RESP OF: CDT / GOOD CONDUCT TIME RELEASE
                   PHONE..: 313-226-6186    FAX: 313-226-7327
PRE-RELEASE PREPARATION DATE: 03-17-2005

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  09-16-2005 VIA GCT REL

-----------------------PRIOR JUDGMENT/WARRANT NO: 020 ----------------------

COURT OF JURISDICTION...........: MICHIGAN, EASTERN DISTRICT
DOCKET NUMBER...................: 88-CR-80114
JUDGE...........................: GILMORE
DATE SENTENCED/PROBATION IMPOSED: 01-27-1989
DATE COMMITTED..................: 03-20-1989
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                 FELONY ASSESS  MISDMNR ASSESS  FINES           COSTS
NON-COMMITTED.:  $50.00         $00.00          $00.00          $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

--------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  551
OFF/CHG: BANK ROBBERY BY FORCE T18 USC 2113(A)

  SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   240 MONTHS
  TERM OF SUPERVISION............:     5 YEARS
  DATE OF OFFENSE................: 02-17-1988

G0002       MORE PAGES TO FOLLOW . . .
```

```
   NERH4          *          PUBLIC INFORMATION         *     10-21-2005
PAGE 004          *             INMATE DATA             *     08:36:05
                              AS OF 09-16-2005
```

REGNO..: 01215-039 NAME: SHAH, ROBERT ARBEB

```
               RESP OF: CDT / GOOD CONDUCT TIME RELEASE
               PHONE..: 313-226-6186    FAX: 313-226-7327
-------------------------PRIOR COMPUTATION NO: 020 -------------------------
```

COMPUTATION 020 WAS LAST UPDATED ON 05-31-2005 AT CDT AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 020:    020 010

```
DATE COMPUTATION BEGAN..........: 01-27-1989
TOTAL TERM IN EFFECT............:   240 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    20 YEARS
EARLIEST DATE OF OFFENSE........: 02-17-1988

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                    03-04-1988     01-26-1989

TOTAL PRIOR CREDIT TIME.........: 329
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 898
TOTAL GCT EARNED................: 898
STATUTORY RELEASE DATE PROJECTED: 09-17-2005
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 03-03-2008


ACTUAL SATISFACTION DATE........: 09-16-2005
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CDT
ACTUAL SATISFACTION KEYED BY....: BPC

DAYS REMAINING..................: 898
FINAL PUBLIC LAW DAYS...........: 1
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

```
NERH4              *          PUBLIC INFORMATION        *      10-21-2005
PAGE 005           *             INMATE DATA            *      08:36:05
                                AS OF 04-06-1987

REGNO..: 01215-039 NAME: SHAH, ROBERT ARBEB

                  RESP OF: CDT / GOOD CONDUCT TIME RELEASE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  04-06-1987 VIA MAND REL

----------------------PRIOR JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: MICHIGAN, EASTERN DISTRICT
DOCKET NUMBER...................: 81-80678
JUDGE...........................: GUY
DATE SENTENCED/PROBATION IMPOSED: 04-08-1982
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 05-24-1982
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:


RESTITUTION...:  PROPERTY: NO  SERVICES:  NO        AMOUNT:  $00.00

--------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  551
OFF/CHG: UNARMED BANK ROBBERY T18:2113(A)

  SENTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
  SENTENCE IMPOSED/TIME TO SERVE.:    8 YEARS

-------------------------PRIOR COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-06-1987 AT MIL AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010




G0002        MORE PAGES TO FOLLOW . . .
```

```
  NERH4          *        PUBLIC INFORMATION      *    10-21-2005
PAGE 006 OF 006 *            INMATE DATA          *    08:36:05
                          AS OF 04-06-1987
```

REGNO..: 01215-039 NAME: SHAH, ROBERT ARBEB

```
                RESP OF: CDT / GOOD CONDUCT TIME RELEASE
                PHONE..: 313-226-6186    FAX: 313-226-7327
DATE COMPUTATION BEGAN..........: 04-08-1982
TOTAL TERM IN EFFECT............:    8 YEARS
TOTAL TERM IN EFFECT CONVERTED..:    8 YEARS

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                    01-03-1982    04-07-1982

TOTAL JAIL CREDIT TIME..........: 95
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 8
TOTAL SGT POSSIBLE..............: 768
PAROLE ELIGIBILITY..............: 09-03-1984
STATUTORY RELEASE DATE..........: 11-26-1987
TWO THIRDS DATE.................: 05-04-1987
180 DAY DATE....................: 07-06-1989
EXPIRATION FULL TERM DATE.......: 01-02-1990

NEXT PAROLE HEARING DATE........: N/A
TYPE OF HEARING.................: CONTINUE TO EXPIRATION

ACTUAL SATISFACTION DATE........: 04-06-1987
ACTUAL SATISFACTION METHOD......: MAND REL
ACTUAL SATISFACTION FACILITY....: MIL
ACTUAL SATISFACTION KEYED BY....: TZ

DAYS REMAINING..................: 1002
FINAL PUBLIC LAW DAYS...........: 0
```

S0039       ALL CURRENT COMPS ARE SATISFIED

# Document 1b

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

WARDEN'S OFFICE
FCI MCKEAN, PA

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** _Smith     Robert_     04 JUL -9 PM 1:57 _13-057_     _3-A_     _McKean_
       LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST** ... Dr. Olenginski's response was a representation made
without regard to a study or studies made concerning deleterious
side-effects of Seroquel and also, no reference was made to
the effect overdosage would have on my body. Dr. Olenginski,
and wanted no effort to take cognizance of symptoms differently
manifested to him. He should be aware of the substantial risk
to my health. The Seroquel regimen, as prescribed, has created
his disregard and indifference exacerbates the problem.

_7-9-04_
    DATE

_Robert Smith_
            SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____
    DATE
                               WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**
                                   CASE NUMBER: _343057_

                                              CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____
    DATE
                       RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN
                                                            BP–229(13)
                                                      APRIL 1982

SHAH, Robert Arbeb
Reg. No.: 01215-039
MCK 343051-F1

---

### PART B - RESPONSE

This is in response to your Request for Administrative Remedy receipted in my office on July 9, 2004, in which you claim indifference by a medical staff member for side effects caused by medication issued by the health services department.

Please refer to your response for your Request for Administrative Remedy, MCK 291765-F1, which addressed these same issues.

This is for informational purposes only.

In the event that you are not satisfied with this response, you may appeal within twenty (20) calendar days from the date of this response by submitting a BP-DIR-230 to the regional director.


7/29/04
Date

James F. Sherman, Warden

NAME: SHAH, Robert
Reg. No. 01215-039
MCK 291765-F1

---

### PART B-RESPONSE

This is in response to your Request for Administrative Remedy receipted in my office on February 28, 2003, in which you claim your medication was changed by the Clinical Director causing severe side effects.

An investigation of your complaint reveals, when you arrived at FCI McKean, July 19, 2002 you were taking the following medication:

Klonipin      1.0 mg take one half tablet every day
Venlafaxine   150 mg take one tablet every night
Trazodone     100 mg take three tablets every night
Quetiapine    200 mg take one tablet three times per day

You were continued on the same medication regiment that you arrived on. On August 2, 2002, you were evaluated by the psychiatrist per telemedicine. The psychiatrist recommended that the Klonipin be discontinued and the Quetiapine be increased to 300 mg three times per day. You were evaluated again by the psychiatrist October 25, 2002, and the Quetiapine dosing schedule was changed to 200 mg twice per day and 500 mg at night. The daily total dosage remained the same. On November 27, 2002, the quentiapine was decreased to 500 mg each night and lansoprozole was added for stomach discomfort. On December 2, 2002, the Quetiapine was discontinued and Klonipin was ordered 1 mg one tablet two times per day. On December 10, 2002, you reported to the medical officer you felt back to normal and requested to go back to work which was granted. On December 13, 2002, per telemedicine the Klonipin was discontinued. A telemedicine evaluation December 20, 2002, recommended to continue the Trazodone and discontinue the Venlafaxine. The last telemedicine evaluation was February 28, 2003, and recommended the current medication regiment be continued. You are currently on Trazodone 100 mg three tablets every day.
 The psychiatrist has made some changes in your regiment according to your response to the medication and possible side effects. You will continue to be followed on a regular basis at clinic.

Based on this information, your Request for Administrative Remedy has been denied.

In the event that you are not satisfied with this response, you may appeal within twenty (20) calendar days from the date of this response by submitting a BP- DIR-230 to the regional director.

---

*"Sensitive-Limited Official Use Only"*

Date                                  John J. LaManna, Warden

*"Sensitive-Limited Official Use Only"*

# Document 1c

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: **SHAH, ROBERT**          **01215-039**          **DB**          **MCKEAN**

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL**

ADMINISTRATIVE REMEDY AGAINST MR. MONTGOMERY-ASSISTANT HOSPITAL ADMINISTRATOR

    Montgomery response was a representation made without regard to a study or studies made concerning deleterious side-effect of SEROQUEL and also no reference was made as to the effect of over-dosage would have on my body.  Mr. Montgomery continue to treat my legitimate medical concerns indifferently, and made no effort to take congnizance of the symptoms manifested to him. He should be aware of the substential risk to my health the SEROQUEL regimen, as perscribed, has created. His disregard and indifference exucerbrates the problem.

_8-9-04_

DATE                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

---

DATE                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

FIRST COPY: REGIONAL FILE COPY                    CASE NUMBER: _343051-R1_

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

USP LVN          DATE                    SIGNATURE, RECIPIENT OF REGIONAL APPEAL          BP-230(13)

**SHAH, Robert**
Reg. No. 01215-039
Appeal No. 343051-R1
Page One

---

### Part B - Response

In your appeal, you allege the Assistant Health Services
Administrator (AHSA) at FCI McKean has disregarded studies
conducted concerning the side effects of Seroquel and the effects
of over dosage.  You also claim he is indifferent to your
legitimate medical concerns and state he should be aware of the
substantial risk to your health that the Seroquel, as prescribed,
has created.

A review of your appeal reveals that your complaint regarding the
dosage of Seroquel that you were given by the Chief Psychiatrist
at FMC Devens has been addressed in Request for Administrative
Remedy No. 291765-F1.  Additionally, your medical records reveal
that you arrived at FCI McKean on July 19, 2002, with a history
of post-traumatic stress disorder, major depression with
psychotic features, poly-substance dependence, adult antisocial
behavior to rule out borderline personality disorder,
hypertension, chronic obstructive pulmonary disease, positive PPD
and a benign lung nodule.  You signed a consent form to use
atypical anti-psychotic medication, Seroquel, a form which
described common side effects.  On May 26, 2004, you were in a
meeting that included a staff physician, an Associate Warden and
the AHSA.  You explained to them your concern about your
medications, the symptoms you have and what you feel were side
effects.  Your Post Traumatic Stress Disorder symptoms (PTSD)
related to this were reviewed, as well as, related treatment.
You may access routine sick call and have your concerns regarding
medication side effects addressed.  Medical staff advise that you
are receiving appropriate medical care.  Accordingly, your appeal
is denied.

If you are dissatisfied with this response, you may appeal to the
General Counsel, Federal Bureau of Prisons.  Your appeal must be
received in the Administration Remedy Section, Office of General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534, within 30 calendar days of the date of
this response.

Date: September 15, 2004

D. SCOTT DODRILL
Regional Director

# Document 1d

**U.S. Department of Justice**

**Federal Bureau of Prisons**

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | SHAH, Robert | 01215-039 | 0B | FCI MCKEAN |
|-------|--------------|-----------|-----|-----------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

The Response from the Regional Director ignores or mis-interprets
two important points. Although it is true that I signed a "consent"
form to receive Seroquel, the form provided was a pre-printed form
used for myriad psychotropic medications, not specifically Seroquel.
At the time, I was simply told to sign the form. No further advice
or information was provided. Side effects were not discussed. I was
not told that the dosage was far beyond that recommended by the manu-
facturer or approved by the FDA. The Response also ignores the fact
that the over-medication created new medical problems and exacerbated
existing problems. I have continuously sought diagnosis of the new
problems and treatment for existing problems, but my complaints have
been ignored and I have not had any staff person listen to my com-
plaint regarding the problem with the overmedication. My courteous
requests to Mr. Montgomery have been rudely and summarily dismissed.
No one has taken the time to explain to me what further problems I
might anticipate because of the over-medication. I have attached
literature from both the drug manufacturer and the FDA to support.

_____  DATE                          _____  SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____
DATE                                                GENERAL COUNSEL

SECOND COPY: REGIONAL FILE COPY                     CASE NUMBER: 342031-A1

**Part C—RECEIPT**

                                                    CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

_____
DATE                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

**Administrative Remedy No. 343051-A1**
**Part B - Response**

You contend you were told to sign a consent for the medication Seroquel, and that side effects were not explained.  You also state that your dosage was far beyond the manufacturer's recommendation and FDA-approved maximum dose.  You allege your previous Seroquel dose has created new symptoms.

Relevant portions of your medical record have been reviewed and reveal that the consent form signed allowing Seroquel to be prescribed contained proper information regarding common side effects of atypical antipsychotic medications, including Seroquel.  Your signature on the consent form also serves to certify that its contents were understood, that you had no additional questions, and that you understood that you could stop taking the medication at any time by contacting the physician. Constipation is indicated as a possible side effect on the signed consent and was experienced as noted in your medical record.  It is your responsibility to ensure that you understand forms to which you attach your signature, as it was you who signed the consent form.

FDA registration trials of antipsychotic agents do not address the effects of treatment on various illness phases.  The trials also commonly exclude treatment-resistant patients and those with refractory illness.  In these patients, for example, empirical trials of higher antipsychotic dosages is often considered as a clinical option.  In your case, the maximum daily dose prescribed was 900mg in lieu of the manufacturer's recommended daily dose of 800 mg.  Trials of Seroquel 1,000 mg to 1,400 mg per day have been studied with no significant changes observed regarding mean weight, glucose, total cholesterol, prolactin, or electro-cardiogram Q-T wave intervals.

Your latest prescription of Seroquel was discontinued on December 2, 2002, and should be causing no further adverse effects.  Descriptions of new symptoms you allegedly experience are not specified in your appeal.  However, your medical record reflects that you have been evaluated and treated on numerous occasions for various ailments.  You are therefore encouraged to continue to work with medical staff should you experience significant changes in your health.

Inasmuch as you request no specific relief, this response is for informational purposes only.

_November 16, 2001_
Date

_Jon Vickie Gumbo_
Harrell Watts, Administrator
National Inmate Appeals

# Document 1e

Vol. 3, No. 8 / August 2004

# High-dose antipsychotics: Desperation or data-driven?

*For patients on the brink of the neuroleptic threshold, risks of high-dose antipsychotics may outweigh any benefit.*

**Joseph M. Pierre, MD**
Assistant clinical professor
Department of psychiatry and biobehavioral sciences
Geffen School of Medicine at UCLA
Staff psychiatrist
VA West Los Angeles Healthcare Center

**Donna A. Wirshing, MD**
Associate professor in residence
Department of psychiatry and biobehavioral sciences
Geffen School of Medicine at UCLA
Co-chief, Schizophrenia Treatment Unit
VA West Los Angeles Healthcare Center

**William C. Wirshing, MD**
Professor of clinical psychiatry
Department of psychiatry and biobehavioral sciences
Geffen School of Medicine at UCLA
Co-chief, Schizophrenia Treatment Unit
VA West Los Angeles Healthcare Center

When nothing else works, desperate clinicians are resorting to progressively more-tenuous and unpredictable treatments, trying to improve the lives of patients with refractory schizophrenia. High-dose antipsychotics is a common strategy.

Does boosting antipsychotic doses beyond the recommended range—but short of the neuroleptic threshold—enhance efficacy? This article attempts to answer that question by presenting the evidence on higher-than-recommended doses of atypical antipsychotics.

## Lessons from neuroleptics

Up to 30% of patients with schizophrenia do not respond to antipsychotics and are considered "treatment refractory."[1] Even among those who do respond, improving symptoms by 20%—as research defines "treatment response"—does not necessarily yield clinical or functional improvement. Clozapine is the only atypical antipsychotic with well-established efficacy in these chronically ill patients,[2] but its daunting side effects greatly curtail its use.

Before atypical antipsychotics, patients who did not respond to usual dosages of the typical neuroleptics were treated with higher dosages or switched to another drug class. Although many clinicians embraced high-dose neuroleptics, subsequent research discredited "rapid neuroleptization" in any clinical circumstance and showed that exceeding an antipsychotic's neuroleptic threshold—the dose at which extrapyramidal side effects (EPS) occur—reduces its efficacy (Figure 1).[3-5] In some instances, reducing neuroleptic dosages improves treatment-resistant patients' symptoms and reduces drug-induced side effects.[6]

Atypical antipsychotics are defined by their relative lack of EPS at recommended dosages (Figure 2). Because these agents can cause EPS if dosed too high, however, our

Case 1:04-cv-00259-SJM-SPB     Document 39-2     Filed 11/21/2005     Page 24 of 30

Recovery from schizophrenia: Fact or fiction?                                    Page 2 of 5

historical habit of testing this dose limit risks losing "atypicality" and encountering other untoward events (Figure 3).

What is the safest, most effective dosage? Consider the evidence for each atypical antipsychotic.

## Risperidone

**Recommended dosage too high?** When using atypicals at recommended doses, you are most likely to encounter the neuroleptic threshold with risperidone, with EPS risk increasing substantially at >6 mg/d.[7] Post-approval studies set the most effective and safest dosage at approximately 4 mg/d, though this dosage was not studied in North American pre-approval trials. Dosages of 2 to 4 mg/d have been associated with more-favorable outcomes, suggesting that the initial recommendation to titrate to 6 mg/d within the first 3 days was ill-advised.[8]

In our study of patients with treatment-refractory schizophrenia,[9] those treated with risperidone, 6 mg/d, improved significantly more after 4 weeks than did those receiving haloperidol, 15 mg/d, based on Brief Psychiatric Rating Scale (BPRS) scores. No additional benefit was seen after risperidone was increased to >6 mg/d at 8 weeks. Akathisia and tardive dyskinesia occurred significantly more often in the haloperidol group.

**Conclusion.** Some patients respond to higher-dose risperidone, but emerging EPS suggest the need to reduce the dosage rather than add an antiparkinsonian agent.

## Olanzapine

**Mixed results.** Case reports suggest that some patients who did not respond to previous antipsychotic trials or olanzapine, 20 mg/d, improved significantly—without substantial side effects—when olanzapine was increased up to 60 mg/d.[10-14] Other case studies, however, report EPS, increased heart rate, increased transaminases, hyperprolactinemia, and prolonged QTc interval with high-dose olanzapine.[14-16]

**In an open-label trial,**[17] 43 patients with schizophrenia received olanzapine, up to 40 mg/d, after inadequate response to neuroleptics and risperidone or clozapine. Olanzapine was titrated to 20 mg/d by week 4 and increased 5 mg every 2 weeks if symptoms did not improve. After 14 weeks, improvement was modest and only 17% of patients met response criteria. However, >20 mg/d reduced symptoms more than did <20 mg/d, suggesting that high-dose olanzapine was more effective.

**In a randomized trial,**[18] patients who did not respond to at least one atypical antipsychotic then received 8 weeks of fixed, standard-dose treatment with (mean dosages):

- haloperidol, 18.9 mg/d
- risperidone, 7.9 mg/d
- olanzapine, 19.6 mg/d
- clozapine, 401.6 mg/d.

Flexible dosing was then allowed for 6 weeks, and mean dosages were:

- haloperidol, 25.7 mg/d
- risperidone, 11.6 mg/d
- olanzapine, 30.4 mg/d
- clozapine, 526.6 mg/d.

Symptoms improved modestly at best for all medications, although patients taking olanzapine or clozapine improved significantly more than those treated with haloperidol as shown by mean changes in total Positive and Negative Syndrome Scale (PANSS) scores.

PANSS scores for olanzapine-treated patients showed additional improvement at week 14—when higher dosages were used—compared with week 8. This was not the case for the other medications, for which response plateaued. These findings suggest that high-dose risperidone and haloperidol are incrementally ineffective, but high-dose olanzapine could help some patients with refractory symptoms.

Results were different in a randomized, double-blind, 16-week, crossover study,[19] when 13 patients with inadequate response to neuroleptics, risperidone, or conventional-dose olanzapine then received olanzapine, 50 mg/d, or clozapine, 450 mg/d. No olanzapine-treated patients and 20% of clozapine-treated patients met criteria for treatment response (20% improvement in BPRS score and final BPRS score <35 or 1-point improvement on Clinical Global Impressions-Severity of Illness scale).

Subjects switching from clozapine to olanzapine tended to worsen, whereas those switching from olanzapine to clozapine tended to improve. Olanzapine-treated patients experienced more anticholinergic side effects and more weight gain than did clozapine-treated subjects.[20]

**Conclusion.** These mixed findings on high-dose olanzapine suggest questionable efficacy in patients with treatment-resistant schizophrenia and an uncertain risk of increased toxicity.

## Quetiapine

Early placebo-controlled studies of quetiapine in schizophrenia concluded that statistically significant improvement begins at 150 mg/d and falls off after 600 mg/d.[21] Although few high-dose quetiapine cases have been presented, clinical opinion holds that:

• most patients with chronic schizophrenia require 400 to 800 mg/d
• some treatment-refractory patients might benefit from >800 mg/d.

One patient responded to quetiapine, 1,600 mg/d, after not responding to olanzapine, 40 mg/d, and quetiapine, 800 mg/d. Constipation was the only reported side effect.[22]

Our group[23] reported a series of 7 patients who responded (by clinician report) to quetiapine, 1,200 to 2,400 mg/d, after not responding to quetiapine, 800 mg/d, or to neuroleptics, risperidone, or olanzapine. Six responded to high-dose quetiapine and 1 to high-dose quetiapine plus risperidone, 2 mg/d; 4 received adjunctive divalproex sodium, 1,500 to 3,000 mg/d. Psychopathology, violence, and behavioral disturbances were reduced throughout 5 to 14 months of monitoring. Side effects included sedation, orthostasis, and dysphagia.

When Nelson et al[24] treated 13 subjects for 14 weeks with quetiapine, 1,000 to 1,400 mg/d, mean weight, glucose, total cholesterol, prolactin, and QTc interval duration did not change significantly. Heart rate increased significantly (though not to tachycardia), and headache, constipation, and lethargy were the most frequent side effects.

**Summary.** Although encouraging, these reports are preliminary, unpublished, and lack peer review. Controlled trials of high-dose quetiapine's efficacy and safety are needed.

## Ziprasidone and aripiprazole

No studies of high-dose ziprasidone or aripiprazole have been published. In premarketing trials:

• ziprasidone was studied at 200 mg/d and released with a maximum recommended dosage of 160 mg/d
• aripiprazole, 30 mg/d, was not more effective than 15 mg/d.[25]

Deutschman et al[26] reviewed the charts of 31 patients who received ziprasidone, 240 to 320 mg/d, after an "incomplete" response to 160 mg/d. At the higher dosing:

- psychosis, affective symptoms, or anxiety improved in nearly one-half of patients
- 15% reported sedation, but most reported no side effects
- none developed QTc intervals >500 msec.

## Caveats and precautions

These uncontrolled case reports and open-label studies do not "prove" efficacy or safety but reflect clinical practice. More than anything, they show that we need controlled trials to gauge high-dose antipsychotic therapy's efficacy and safety and to curb our collective habit of relying on anecdotal experience and idiosyncratic beliefs.

Despite its side-effect profile, clozapine remains the treatment of choice for refractory schizophrenia. Given high-dose antipsychotic therapy's uncertain efficacy and unknown risks, the evidence supports a clozapine trial before higher-than-recommended dosing is attempted.

Because educated guesswork plays a role in premarketing dosing studies, a medication's optimal dose may be:

- overestimated (as with risperidone)
- underestimated (as perhaps with olanzapine and quetiapine).

Keep in mind some important caveats when you consider giving a patient high-dose antipsychotic therapy (Box).[27] Of course, nonadherence is often the cause of apparent medication nonresponse. Increasing the dosage of a medication a patient is not taking rarely improves adherence. Interventions to enhance adherence—careful assessment, psychoeducation, and using long-acting intramuscular medication—may be useful.

*For more information on this topic, click here.*

## References

1. Conley RR, Buchanan RW. Evaluation of treatment-resistant schizophrenia. *Schizophr Bull* 1997;23:663-74.

2. Chakos M, Lieberman J, Hoffman E, et al. Effectiveness of second-generation antipsychotics in patients with treatment-resistant schizophrenia: A review and meta-analysis of randomized trials. *Am J Psychiatry* 2001;158:518-26.

3. Baldessarini RJ, Cohen BM, Teicher MH. Significance of neuroleptic dose and plasma level in the pharmacological treatment of psychoses. *Arch Gen Psych* 1988;45:79-91.

4. McEvoy JP, Hogarty GE, Steingard S. Optimal dose of neuroleptic in acute schizophrenia: A controlled study of the neuroleptic threshold and higher haloperidol dose. *Arch Gen Psychiatry* 1991;48:739-45.

5. Van Putten T, Marder SR, Mintz J, Poland R. Haloperidol plasma levels and clinical response: A therapeutic window relationship. *Am J Psychiatry* 1992;149:500-5.

6. Van Putten T, Marshall BD, Liberman R, et al. Systematic dosage reduction in treatment-resistant schizophrenic patients. *Psychopharmacol Bull* 1993;29:315-20.

7. Marder SR, Meibach RC. Risperidone in the treatment of schizophrenia. *Am J Psychiatry* 1994;151:825-36.

8. Love RC, Conley RR, Kelly DL, Bartko JJ. A dose-outcome analysis of risperidone. *J Clin Psychiatry* 1999;60:771-5.

9. Wirshing DA, Marshall BD Jr, Green MF, et al. Risperidone in treatment-refractory schizophrenia. *Am J Psychiatry* 1999;156:1374-9.

10. Fanous A, Lindenmayer JP. Schizophrenia and schizoaffective disorder treated with high doses of olanzapine. *J Clin Psychopharmacol* 1999;19:275-6.

11. Reich J. Use of high-dose olanzapine in refractory psychosis. *Am J Psychiatry* 1999;156:661.

Recovery from schizophrenia: Fact or fiction?

12. Dursun SM, Gardner DM, Bird DC, Flinn J. Olanzapine for patients with treatment-resistant schizophrenia: A naturalistic case-series outcome study. *Can J Psychiatry* 1999;44:701-4.

13. Lerner V. High-dose olanzapine for treatment-refractory schizophrenia. *Clin Neuropharmacol* 2003;26:58-61.

14. Sheitman BB, Lindgren JC, Early J, Sved M. High-dose olanzapine for treatment-refractory schizophrenia. *Am J Psychiatry* 1997;154:1626.

15. Bronson BD, Lindenmayer JP. Adverse effects of high-dose olanzapine in treatment-refractory schizophrenia. *J Clin Psychopharmacol* 2000; 20:383-4.

16. Dineen S, Withrow K, Voronovitch L, et al. QTc prolongation and high-dose olanzapine. *Psychosomatics* 2003;44:174-5.

17. Lindenmayer JP, Volavka J, Lieberman J, et al. Olanzapine for schizophrenia refractory to typical and atypical antipsychotics: An open-label, prospective trial. *J Clin Psychopharmacol*. 2001;21:448-53.

18. Volavka J, Czobor P, Sheitman B, et al. Clozapine, olanzapine, risperidone, and haloperidol in the treatment of patients with chronic schizophrenia and schizoaffective disorder. *Am J Psychiatry* 2002;159:255-62.

19. Conley RR, Kelly DL, Richardson CM, et al. The efficacy of high-dose olanzapine versus clozapine in treatment-resistant schizophrenia: A double-blind cross-over study. *J Clin Psychopharmacol* 2003;23:668-71.

20. Kelly DL, Conley RR, Richardson CM, et al. Adverse effects and laboratory parameters of high-dose olanzapine vs. clozapine in treatment-resistant schizophrenia. *Ann Clin Psychiatry* 2003;15:181-6.

21. Arvanitis LA, Miller BG, and the Seroquel Trial 13 Study Group. Multiple fixed doses of "Seroquel" (quetiapine) in patients with acute exacerbation of schizophrenia: A comparison with haloperidol and placebo. *Biol Psychiatry* 1997;42:233-46.

22. Bobes J, Garcia-Portilla MP, Saiz PA, et al. High degree of tolerability for monotherapy with high doses of quetiapine: A case report. *J Clin Psychiatry* 2002;63:1048-9.

23. Pierre JM, Wirshing DA, Cannell J, et al. *High-dose quetiapine in treatment refractory schizophrenia (poster)*. Colorado Springs, CO: International Congress of Schizophrenia Research, 2003; abstracted in Schizophrenia Res 2003;60(supp):299.

24. Nelson MW, Reynolds R, Kelly DL, et al. *Safety and tolerability of high-dose quetiapine in treatment-refractory schizophrenia: Preliminary results from an open-label trial (poster)*. Colorado Springs, CO: International Congress of Schizophrenia Research, 2003; abstracted in Schizophrenia Res 2003;60(supp):363.

25. Potkin SG, Saha AR, Kujawa MJ, et al. Aripiprazole, an antipsychotic with a novel mechanism of action, and risperidone vs placebo in patients with schizophrenia and schizoaffective disorder. *Arch Gen Psychiatry* 2003;60:681-90.

26. Deutschman DA, Deutschman DH. *High-dose ziprasidone: effectiveness and tolerability in clinical practice (poster)*. Boston, MA: American Psychiatric Association Institute on Psychiatric Services annual meeting, 2003.

27. Steingard S, Allen M, Schooler MR. A study of pharmacologic treatment on medication-compliant schizophrenics who relapse. *J Clin Psychiatry* 1994;55:470-2.

## Related resources

Marder SR, Essock SM, Miller AL, et al. The Mount Sinai Conference on the pharmacotherapy of schizophrenia. *Schizophrenia Bull* 2002;28:5-16.

Practice guideline for the treatment of patients with schizophrenia (2nd ed). *Am J Psychiatry* 2004;161(suppl):1-56.

Texas Medication Algorithm Project antipsychotic algorithm. http://www.mhmr.state.tx.us/centraloffice/medicaldirector/timascz1algo.pdf

## Drug brand names

**Document 1f**

UNITED STATES GOVERNMENT

# Memorandum

Northeast Regional Office, Philadelphia, PA
FEDERAL BUREAU OF PRISONS

**DATE:** November 20, 2003

**REPLY TO**
**ATTN OF:** Henry J. Sadowski, Regional Counsel

**SUBJECT:** Administrative Tort Claim No. TRT-NER-2003-03388

**TO:** Robert Arbeb Shah, Reg. No. 01215-039
FCI McKean

Your Administrative Tort Claim No. TRT-NER-2003-03388, dated
June 23, 2003, and properly received in this office on June 30,
2003, has been considered for settlement as provided by the
Federal Tort Claims Act (FTCA), 28 U.S.C. § 2672, under
authority delegated to me by 28 C.F.R. § 543.30.  You seek
compensatory damages in the amount of $5,000,000.00 for an
alleged personal injury.  Specifically, you claim medical staff
at the Federal Correctional Institution (FCI), McKean,
Pennsylvania, improperly prescribed you an antipsychotic
medication, causing you severe mental deterioration,
hallucination, abdominal pain, constipation, back pain, neck pain
and dry mouth.

After careful review of this claim, I have decided not to offer
a settlement.  Investigation reveals you have a history of post-
traumatic stress disorder, major depression with psychotic
features, polysubstance dependence, adult antisocial behavior,
hypertension, chronic obstructive pulmonary disease,
positive ppd test and benign lung nodule.  The medication you
claim caused you injury, Seroquel, was part of your treatment
regiment upon your arrival at FCI McKean.  You were advised of
the possible side effects and signed the treatment consent form.
The medical record indicates you were appropriately prescribed
this medication for the symptoms you present.  It also indicates
that long-term continued use has been appropriately prescribed in
your case.  You fail to show you have actually experienced a
personal injury as the result of negligence on the part of any
Bureau of Prisons' employee.

Accordingly, your claim is denied.  If you are dissatisfied with
this decision, you may seek reconsideration from this office or
bring an action against the United States in an appropriate
United States District Court within six (6) months of the date of
this memorandum.

cc: John J. LaManna, Warden, FCI McKean

## ACKNOWLEDGMENT OF RECEIPT

### DENIAL OF TORT CLAIM

I, Robert Arbeb Shah, Reg. No. 01215-039, hereby acknowledge receipt this **25TH** day of *November*____, 2003, of the November 20, 2003, memorandum from Henry J. Sadowski, Regional Counsel, Northeast Region, Federal Bureau of Prisons, informing me of the denial of my tort claim (TRT-NER-2003-03388).


_____
~~Signature~~


Witnessed this **25TH** day of *NOVEMBER*____, 2003.


_____
Staff Witness


FAX MEMO
# PAGES  1    DATE 11/25/03 FAX #_____
TO  NERO Legal
FROM  McKean Legal
CO. _____
PH #_____ FAX #_____