**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT SHAH, ) | |
|        **Plaintiff** ) | |
| ) | **C.A. 04-259 Erie** |
|   **v.** ) | **District Judge McLaughlin** |
| ) | **Magistrate Judge Baxter** |
| WALTER RHINEHART, et al., ) | |
|        **Defendants.** ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

      It is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 38], be granted.

**II.      REPORT**

      On or about September 13, 2004, Plaintiff Robert Shah, a prisoner formerly incarcerated at the Federal Correctional Institution at McKean, Pennsylvania ("FCI-McKean"), filed this civil rights action pursuant to Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against individual Defendants Walter Rhinehart, Chief Psychologist at FCI-McKean ("Rhinehart"); Herbert Beam, M.D., Staff Physician at FCI-McKean ("Beam"); James Fletcher, M.D., Staff Psychologist at the Federal Medical Center at Devens, Massachusetts ("Fletcher"); Dennis Olson, M.D., Clinical Director at FCI-McKean ("Olson"); Violette Geza, Chief Pharmacist at FCI-McKean ("Geza"); Steven Labrozzi, Physician's Assistant at FCI-McKean ("Labrozzi"); Bonnie Saylor, Nurse Practitioner at FCI-McKean ("Saylor"); J. Glenn, Nurse Practitioner at FCI-McKean ("Glenn"); and Charles Montgomery, Physician's Assistant at FCI-McKean ("Montgomery"). (Document # 5, Complaint).[1]

---

[1]

Although all of these Defendants are identified in the caption of Plaintiff's Complaint, the only Defendant against whom Plaintiff makes any allegations is Defendant Beam. (See Document # 5, Complaint, at Section IV.C.) The Complaint is totally devoid of any allegations against any of the remaining Defendants.

Plaintiff alleges that Defendant Beam prescribed him a dosage of Seroquel in excess of the maximum dosage recommended by the manufacturer of the medication and, thus, "grossly and negligently over-medicated" him. As a result, Plaintiff claims that he began experiencing medical problems, including "neck pain, seizures and fainting spells, tachycardia, blurred vision, loss of mental alertness or acuity, difficulty in swallowing and intestinal distress." (Document # 5, Complaint, at Section IV.C). Plaintiff claims further that when he presented his symptoms to Defendant Beam and "his subordinate health care givers" he was "variously rebuffed, treated with over-the-counter medicine or told that [he] had dental problems." (Id.). Plaintiff has failed to specify the relief requested for these claims. (Document # 5, Complaint, at Section VI).

Defendants have filed a motion to dismiss, or in the alternative, motion for summary judgment [Document # 39], asserting that: (i) Plaintiff's claim does not rise to the level of a constitutional violation; (ii) Plaintiff has failed to make any allegations against Defendants Rhinehart, Fletcher, Olson, Geza, Labozzi, Saylor, Glenn, and Montgomery, and, therefore, Plaintiff has failed to state a claim upon which relief may be granted against such Defendants; (iii) Defendants Geza, Saylor and Glenn are employees of the Public Health Service and are, thus, immune from suit in a Bivens action under 42 U.S.C. § 233(a); and (iv) Defendants are entitled to qualified immunity. Plaintiff has not filed a response to Defendants' motion, despite being granted the opportunity to do so by Order of this Court dated November 30, 2005. [Document # 43]. This matter is now ripe for consideration.

**A.      Factual History**

On or around January 27, 1989, Plaintiff was sentenced to serve 240 months of incarceration for bank robbery by force. (Document # 39, Attachment 1a at p. 3). On or about July 19, 2002, Plaintiff was transferred to FCI McKean from FCI Cumberland, Maryland. (Document # 39, Attachment 1a at p. 1). At the time of his transfer Plaintiff had been taking the prescription medication Quetiapine Fumarate, known by the brand name Seroquel, which is

2

prescribed for the treatment of schizophrenia. (See Declaration of Dennis Olson, M.D., submitted as Defendants' Exhibit A ("Olson Declaration") at ¶ 3a).  At the time, Plaintiff was taking 200 mg of Seroquel, three times a day, for a total of 600 mg per day. (Id.)

On or around August 2, 2002, Plaintiff was seen in the psychiatric clinic, via telepsychiatry, by Defendants Fletcher and Beam. (Olson Declaration at ¶ 3e).  During this consultation, Plaintiff asked that his prescription for Klonopin be discontinued and his prescription for Seroquel be increased.[2] (Id.).  After considering Plaintiff's medical history, Defendant Fletcher recommended that Klonopin be discontinued and Seroquel be increased to 300 mg, three times a day, for a total of 900 mg. (Id.).

On October 21, 2002, Plaintiff complained of increased gas in his stomach, which he attributed to the increased dosage of Seroquel.  He was prescribed Maalox. (Olson Declaration at ¶ 3i).  The next day Plaintiff went to the prison pharmacy complaining of abdominal cramps, which occurred about thirty minutes after he took each dose of Seroquel. (Olson Declaration at ¶ 3j).  On October 25, 2002, Plaintiff was seen by Defendant Fletcher in the Psychiatric Clinic via telepsychiatry.  Plaintiff complained of cramps and flatulence after taking his dosage of Seroquel, but only during the daytime.  Defendant Fletcher recommended that Plaintiff's dosage of Seroquel be changed to 200 mg, twice a day, and 500 mg at bedtime. (Olson Declaration at ¶ 3k).

On November 7, 2002, Plaintiff was seen by Defendant Beam in the hypertension clinic, at which time Plaintiff complained of abdominal cramps since taking Seroquel.  Plaintiff was assessed with normal blood pressure, depression with psychotic features, and upset stomach, for which he was prescribed Pepto-Bismol. (Olson Declaration at ¶ 3n).  On November 15, 2002, Plaintiff was seen by a physician's assistant with complaints of severe heartburn, which Plaintiff attributed to Seroquel   Plaintiff was prescribed Zantac and Maalox Antacid, and was instructed

---

[2]

Klonopin is generally administered alone or along with other medications to treat convulsive disorders such as epilepsy.  (Olson Declaration at ¶ 3a).

to take his medications as directed, increase his fluid intake, stop eating at night/bedtime, and elevate the head of his bed. (Olson Declaration at ¶ 3o).

On November 22, 2002, Plaintiff was seen by Defendant Montgomery with complaints of abdominal complaints and constipation for ten days, with increased gas and bloating. After examination, he was assessed with constipation, possibly caused by psychiatric medications. As a result, Defendant Montgomery recommended that discontinuation of Seroquel be considered. (Olson Declaration at ¶ 3p). Later the same day, Plaintiff was given a Fleet enema by Defendant LaBrozzi, which relieved Plaintiff's symptoms. (Olson Declaration at ¶ 3r). On November 26, 2002, Plaintiff's housing unit officer called Defendant LaBrozzi and informed him that Plaintiff was complaining of abdominal pain, cramping and constipation. Defendant LaBrozzi conducted a rectal examination of Plaintiff, assessed Plaintiff with constipation, and performed another Fleet enema, after which Plaintiff expressed relief. (Olson Declaration at ¶ 3s).

On November 27, 2002, Plaintiff reported to Defendant Beam that he had experienced substantial side effects with Seroquel after his Klonopin was discontinued. Plaintiff stated that Maalox did not help much, and he suffered increased gas with Zantac. Nevertheless, Plaintiff indicated that he needed to take Seroquel at night to allow him to sleep, even though it gave him heartburn and constipation. Defendant Beam noted that Plaintiff appeared anxious and assessed him with reflux and constipation due to Seroquel. As a result, he reduced Plaintiff's dosage of Seroquel to one dose of 500 mg. to be taken at bedtime. (Olson Declaration at ¶ 3t).

On December 1, 2002, Plaintiff submitted a sick call slip indicating that he wanted to be seen by a health care practitioner because he was experiencing severe constipation from his medication. (Olson Declaration at ¶ 3u). Plaintiff was seen the next day by Defendant Beam, who assessed Plaintiff with reflux and constipation associated with Seroquel. Defendant Beam ordered a complete blood count, prescribed Bisacodyl to help relieve Plaintiff's constipation. (Olson Declaration at ¶ 3v). Later the same day Plaintiff returned to Defendant Beam and told him that he spoke with Defendant Rhinehart in the Psychology Services Department, who then consulted with Defendant Fletcher regarding Plaintiff's condition. Based upon this consultation, Seroquel was discontinued and Klonopin was reinstated. (Olson Declaration at ¶ 3x).

4

Defendant Beam noted that Plaintiff's stool samples showed no evidence of air or fluid levels, and no obstructions were observed in Plaintiff's rectum  Nevertheless, x-rays of Plaintiff's abdomen were ordered to rule out intra-abdominal blockage. (Id.).

On December 10, 2002, Defendant Beam noted that Plaintiff reported he was "feeling back to normal and started to return to work." (Olson Declaration at ¶ 3z).  On December 12, 2002, Defendant Beam noted that the x-rays of Plaintiff's abdomen were essentially unremarkable, except for the presence of a mild ileus. (Olson Declaration at ¶ 3aa).

### B.      Standard of Review
#### 1.      Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief.  The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim.  Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974).  However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997).  Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.  See Swierkiewicz.

5

## 2.    Summary Judgment

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.

6

Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3.  *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

**C.    Discussion**

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976).  "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[3] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury,  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury"  White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation.  Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).  "[M]ere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation.  White, 897 F.2d at 110. Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate.  Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a

---

[3]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

8

question of sound professional judgment. <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979), <u>quoting</u> <u>Bowring v. Goodwin</u>, 551 F.2d 44, 48 (4th Cir. 1977).

_____In this case, Plaintiff's claim that he was prescribed an excessive dosage of Seroquel can only be construed as a medical negligence claim, which fails to state a constitutional violation actionable under the Eighth Amendment. <u>Estelle</u>, 429 U.S. at 106; <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979)(negligent medical treatment is not actionable under the Eighth Amendment).[4]

The only allegation that may be construed as a "deliberate indifference" claim is that Defendant Beam and his "subordinate health care providers ... variously rebuffed, treated with over-the-counter medicine, or told [Plaintiff[ that [he] had dental problems" when he presented them with his medical symptoms that resulted from the alleged over-medication. (Document # 5, Complaint, at Section IV.C). This claim, however, is contradicted by the medical record, which demonstrates that Plaintiff received frequent, prompt and varied treatment for his symptoms, including: a reduction in the dosage of Seroquel during day time hours from 300 mg. per dose to 200 mg. per dose, and an increase in the nighttime dosage from 300 mg. to 500 mg.; a subsequent reduction in the dosage of Seroquel limited to one dose of 500 mg. at bedtime; prescriptions for Pepto-Bismol, Maalox, Zantac, Bisacodyl, Prevacid, and Fibercon; the administration of Fleet enemas; and, ultimately, the discontinuance of Seroquel all together. In addition to these treatment measures, Defendants also conducted rectal examinations, ordered a complete blood count, examined stool samples, and obtained abdominal x-rays. This litany of medical treatment belies Plaintiff's claim that Defendants were deliberately indifferent to his medical needs. Thus, Defendants are entitled to summary judgment in their favor on these claims.

---

[4]

This construction is supported by Plaintiff's own characterization of his claim, where he states that he "had been grossly and negligently over-medicated by Defendant Beam." (Document # 5, Complaint, at Section IV.C).

### D.    Federal Tort Claims Act

As noted above, the crux of Plaintiff's claim is Defendant Beam's alleged medical negligence in prescribing an excessive dosage of Seroquel.  The only basis upon which this claim would be cognizable before this Court is under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. ("FTCA").  Under the FTCA, a claim against a Defendant in his official capacity is essentially a claim against the United States.  As such, Plaintiff's negligence claim against Defendant Beam is properly construed as a claim against the United States under the FTCA.

The FTCA grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment.  See 28 U.S.C. § 2675(a).  The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated.  28 U.S.C. § 2674.  The FTCA specifically requires an initial presentation of the claim to the appropriate federal agency and a final denial by the agency as a non-waivable prerequisite to the filing of the lawsuit.  See Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995).  This requirement is set forth in 28 U.S.C. § 2675(a)[5]:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

The above requirement is jurisdictional and cannot be waived.  Barren by Barren v. United States, 839 F.2d 987, 992 (3d Cir. 1988).  See also McNeil v. United States, 508 U.S. 106

---

[5]

Prior to 1996, FTCA claimants had the option of filing suit in federal court without first presenting their claims to the appropriate federal agency.  Because the vast majority of these claims were ultimately settled before trial, however, the Department of Justice proposed that Congress amend the FTCA to "requir[e] all claims to be presented to the appropriate agency for consideration and possible settlement before a court action could be instituted.  This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage....  Since it is the one directly concerned, it can be expected that claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation." S.Rep. No. 1327, 89th Cong., 2d Sess., 3 (1966), U.S. Code Cong. & Admin. News 1966, pp. 2515, 2517.

(1993)(FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies); <u>Livera v. First Nat. State Bank</u>, 879 F.2d 1186, 1194 (3d Cir. 1989)(Exhaustion of administrative remedies is a jurisdictional requirement that cannot be waived and must be strictly construed).

Defendants concede that Plaintiff has complied with the FTCA's exhaustion requirement.  In particular, Plaintiff filed an administrative torts claim with the Federal Bureau of Prisons ("BOP") on or around June 30, 2003, which was denied by the BOP by memorandum dated November 20, 2003.  (See Declaration of Joyce Horikawa attached as Exhibit C to Document # 39 ("Horikawa Declaration"), at ¶ 5).  The denial memorandum was received by Plaintiff on November 25, 2003. (<u>Id</u>.).  However, Plaintiff did not file this case until September 13, 2004, nearly ten months after receiving the denial memorandum.  28 U.S.C. § 2401(b) provides:

> A tort claim against the United States shall be forever barred unless ... action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The time limits expressed in this statute are jurisdictional and cannot be waived.  <u>In re Franklin Savings Corp.</u>, 385 F.3d 1279, 1287 (10th Cir. 2004)(holding that District Court lacks subject matter jurisdiction when Plaintiff fails to meet timing requirements in 28 U.S.C. § 2401(b)); <u>Hammond v. United States</u>, 613 F.Supp. 358, 359 (W.D.Pa. 1985).  As a result, to the extent Plaintiff's claim may be construed as an FTCA claim, it must be dismissed due to Plaintiff's failure to file suit within the applicable statute of limitations.

## III    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 38], should be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date

of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


                                                        S/Susan Paradise Baxter
                                                        SUSAN PARADISE BAXTER
                                                        Chief U.S. Magistrate Judge


Dated: May 11, 2006

cc:     The Honorable Sean J. McLaughlin
        United States District Judge

12